CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2016

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARCUS ANTONIO MILLER, | ) | CASE NO. 7:15CV00173 |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| CARL MANIS, WARDEN, | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Respondent. | ) | |

Marcus Antonio Miller, through counsel, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under the November 2009 judgment by which he stands convicted of aggravated malicious wounding and other offenses related to a drive-by shooting. After review of the record, the court concludes that respondent's motion to dismiss must be granted.

I.

The shooting at issue in Miller's case took place at approximately 8:30 p.m. on the evening of March 22, 2009, in Lynchburg, Virginia. The perpetrators fired multiple firearms from two vehicles as they drove down Madison Street. Two individuals on the porch of 710 Madison Street, Ronald Slaughter and Keionca Miles, were wounded in the shooting. About an hour earlier that day, Miller had been involved in a verbal altercation between Andretti Thomas and several individuals at 700 Madison Street. One eyewitness to the shooting, Darryl Slaughter, identified Miller as the shooter in the front passenger seat of the lead vehicle.

Miller stood trial on August 31 and September 1, 2009, before a jury in the Circuit Court of the City of Lynchburg on the following charges: aggravated malicious wounding of Ronald Slaughter; malicious wounding of Keionca Miles; two counts of use of a firearm during the

commission of a felony; two counts of malicious discharge of a firearm at an occupied building; and one count of shooting from a vehicle. The jury found Miller not guilty of one count of malicious discharge of a firearm, but found him guilty on the remaining charges. (Case Nos. CR09020636-00, -01, -02, 03, 04, -6). On November 13, 2009, the judge sentenced Miller to an aggregate sentence of 37 years in prison, as recommended by the jury.

Miller noted a timely appeal, raising a number of issues, including a challenge to the legal sufficiency of the evidence in support of the jury's verdicts. (Record No. 2526-09-3.) The Court of Appeals of Virginia denied relief, and a three-judge panel confirmed that ruling on August 24, 2010. The Supreme Court of Virginia refused Miller's subsequent petition for appeal in January 2011. (Record No. 101825.)

Miller next filed a timely petition for a writ of habeas corpus in the Circuit Court of the City of Lynchburg in January 2012. (CL 12006671.) More than two years later, by order dated July 1, 2014, the Circuit Court granted respondent's motion to dismiss. The Supreme Court of Virginia refused Miller's habeas appeal by summary order dated April 13, 2015. (Record No. 141575.)

The § 2254 petition Miller filed in this court on April 15, 2015 raises four claims for relief:

  A.  The evidence that Miller committed the charged offense conduct was legally insufficient;

  B.  The evidence failed to prove the level of intent necessary to convict Miller of aggravated malicious wounding and malicious wounding;

  C.  Trial counsel provided ineffective assistance by failing to request a jury instruction allowing the jury to convict Miller of the lesser included offense of assault and battery; and

  D.  Trial counsel provided ineffective assistance by failing to investigate alternative suspects.

2

Respondent has filed a motion to dismiss and has arranged for all pertinent state court records to be forwarded to this court for review.

## II.

### A. Exhaustion and Procedural Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). If a state court expressly bases its dismissal of a habeas claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal version of that habeas claim is also procedurally barred from review. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas court may review the merits of such a procedurally defaulted claim only if petitioner demonstrates cause for the default and resulting prejudice or makes a colorable showing of actual innocence. Id. at 620.

Respondent concedes that Miller has exhausted state court remedies as to all four of his claims by presenting them to the state courts on appeal or in habeas proceedings. Respondent asserts, however, that Claim B is procedurally barred from federal review on the merits. The court must agree.

In Claim B, Miller asserts that the Commonwealth failed to prove his intent to "maim, disfigure, disable, or kill" anyone when he fired his weapon from his vehicle at the people standing on the porch at 710 Madison Street. Absent proof of such intent beyond a reasonable doubt, Miller could not be found guilty of malicious wounding or aggravated malicious wounding. Miller contends that the evidence supports a reasonable inference that he and the

3

other shooting participants were "merely attempting to scare or intimidate" the people on the porch.

On direct appeal, Miller did not raise any claim that his intent in shooting from the car was to scare or intimidate rather than to maim or kill. Miller did raise the contention in Claim B in his state habeas petition. The Circuit Court dismissed the claim as procedurally defaulted under the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974), that prohibits state habeas review of claims that were available to petitioner at trial or on direct appeal. The Supreme Court of Virginia refused Miller's habeas appeal, finding no reversible error in the Circuit Court's judgment. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991) (recognizing where one reasoned state court judgment rejects federal claim on state procedural ground, later unexplained order upholding that judgment is presumed to rest on same ground). These state court findings of default also bar federal review of Claim B, absent a showing of cause and prejudice or actual innocence. Breard, 134 F.3d at 619; Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (finding it well established that Slayton rule is adequate and independent state law ground barring federal review). Miller makes no showing of cause and prejudice or actual innocence as required to circumvent the procedural bar. Therefore, the court will grant the motion to dismiss as to Claim B.

## B. Standard of Review for Adjudicated Claims

To obtain federal habeas relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 66, 101 (2011) (omitting internal quotations).

## C. Sufficiency of the Evidence

In Claim A, Miller contends that the evidence as a whole demonstrates the inherent incredibility of Darryl Slaughter's testimony that identified Miller as the shooter. Miller raised this contention on direct appeal. The Court of Appeals of Virginia concluded that the evidence was sufficient to support Miller's convictions, and the Supreme Court of Virginia issued a summary order finding no error. Thus, under § 2254(d), this court may grant relief on Claim A only upon determining that the Court of Appeals' rulings are objectively unreasonable. See, e.g., Brumfield v. Cain, __U.S.__, __, 135 S. Ct. 2269, 2276 (2015) (finding that federal habeas court "look[s] through" state supreme court's summary dismissal of appeal petition and evaluates lower court's reasoned decision addressing claims on the merits) (citations omitted).

The Court of Appeals summarized the trial evidence in the light most favorable to the Commonwealth:

> On March 22, 2009, Andretti Thomas and [Miller] visited the home of Alice Mason at approximately 7:30 p.m. to visit Mason's sixteen-year-old daughter. When Mason asked Thomas to leave, he refused. An altercation

5

ensued between Thomas and Mason, prompting Mason's nephew, Wayne Banks, to intervene. [Miller] warned Banks if Banks became involved in the dispute, [Miller] "was going to get in it." Ronald Slaughter then came to Banks's defense, and the dispute continued between the four men, with Slaughter and Banks on one side of the disagreement and [Miller] and Thomas on the other. As the disagreement grew more heated, Thomas threatened to strike Mason with a brick, and Ronald Slaughter's brother, Darryl Slaughter, approached from next door. Darryl fired a gun into the air to end the fight. [Miller], Thomas, and a third male left in response to the gunshot, but [Miller] warned that they would return. One of the men stated, "You want to play with guns, I'll be back."

Approximately one hour later, a red and a white car approached Darryl's home. Darryl was sitting on the front porch with several other people. Concerned about [Miller]'s threat, Darryl continued to carry his gun. As the cars drove by, multiple shots were fired at Darryl's house, wounding Darryl's girlfriend and Ronald Slaughter. Darryl saw [Miller] firing a weapon from the front passenger seat of the burgundy car. After taking cover, Darryl returned fire with his gun, striking the rear of the white vehicle.

A surveillance camera mounted on the house across the street captured images of a burgundy vehicle, followed by a white vehicle, traveling down the street at the time of the shooting. The footage also showed several "muzzle flashes" originating from the front passenger side of the first vehicle as it passed by Darryl's house at 710 Madison Street. A street lamp located directly in front of Darryl's house was illuminated at the time of the shooting.

When police interviewed Darryl on the night of the shooting, he stated [Miller] was the shooter and identified him in a photographic lineup. The next morning [Miller]'s father returned two rental cars he had leased from different car rental agencies.[1] One vehicle was a red 2009 Nissan Murano and the other was a white 2008 Toyota Highlander. The Highlander had a bullet hole in the rear bumper.

A representative from the rental car company leasing the Murano testified she had experienced problems leasing vehicles to [Miller]'s mother, Margie Miller, because [she] allowed her son to drive the cars without authorization from the rental car company. A few days prior to the shooting, another employee of the rental car company observed [Miller] driving the red Murano and notified her office.

When interviewed by police, [Margie] Miller confirmed she had leased a red Murano and that, on the night of the shooting, she had left the Murano at home and had driven her van to work. She also acknowledged she had seen [Miller] in Thomas's company on the day of the shooting. [Miller]'s father told police he went to bed early on the night of the shooting and could not account for the whereabouts of his son or the Murano that evening.

An automobile dealer, Andrew Kappler, testified on behalf of the Commonwealth as an expert "regarding the identification of [the] Nissan Murano and the Toyota Highlander." After reviewing the surveillance footage of the burgundy and white cars on the street at the time of the shooting, Kappler opined

---

[1] Contrary to their usual custom, the Millers returned the cars before the lease period had expired.

> that, based upon the shape of the taillights, the placement of the license plate, the "unique" shape of the rear bumper, and the "lip" on the roofline, the red car was "consistent with" a 2009 Nissan Murano. Noting the "curvature of the back" and the rear "bump-out," Kappler also testified that the white vehicle was "consistent with" a 2008 Toyota Highlander.
>
> . . . .
>
> Stock photographs of the 2008 Highlander and 2009 Murano were presented to the jury.
>
> . . . .
>
> Finally, Antonio Andrews, who was incarcerated with [Miller], testified that [Miller] admitted his role in the shooting and sought Andrews's assistance in bribing Mason not to testify.

(M. Dism. Ex. 2, at 1-3, ECF No. 7-2.)

In habeas corpus proceedings, the reviewing court must find the evidence sufficient to support the conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This standard does not require the prosecution "to rule out every hypothesis except that of guilt."[2] <u>Id.</u> at 318. Furthermore, it is the responsibility of the jury—not the court—to resolve issues of witness credibility and conflicting evidence, to assign weight to the evidence, <u>id.</u> at 319, and "to decide what conclusions should be drawn from evidence." <u>Cavazos v. Smith</u>, __ U.S. __, __, 132 S. Ct. 2, 4 (2011) (<u>per curiam</u>). In applying the <u>Jackson</u> standard, the federal <u>habeas</u> "court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." <u>Id.</u> at 4 (internal quotation marks and citation omitted).

---

[2] The test in Virginia in a circumstantial evidence case is whether the Commonwealth has excluded all reasonable hypotheses of innocence. <u>Strawderman v. Com.</u>, 108 S.E.2d 376, 380 (Va. 1959) ("It is not sufficient that facts and circumstances proved be consistent with the guilt of the accused. To sustain a conviction they must be inconsistent with every reasonable hypothesis of his innocence.") A federal <u>habeas</u> court, however, does not apply this stricter state standard of review for sufficiency of the evidence, since a violation of a state evidentiary rule does not rise to the level of a constitutional claim cognizable under § 2254. <u>See</u> <u>Inge v. Procunier</u>, 758 F.2d 1010, 1014 (4th Cir. 1985).

7

On appeal, Miller argued that Darryl Slaughter's eyewitness testimony identifying Miller as the shooter in the first car was "so utterly lacking an objective basis, incredible, contrary to human experience or to usual behavior as to render it unworthy of belief and insufficient to support these convictions." (Pet. App. 12.) In support of this argument, Miller highlighted this evidence: Darryl was the only person on the porch who claimed to have seen Miller shooting from the car; the shooting took place at night, and the cars drove fast; other witnesses on the porch testified that the angle prevented identifying people in passing cars and that Darryl was on the ground until after the shooting; the Commonwealth did not prosecute Darryl for felony gun possession after the shooting, and he later received a suspended sentence on a pending cocaine charge, suggesting a motive for Darryl to identify the shooter in exchange for leniency; two of Miller's friends testified that they played video games with Miller all evening on March 22, 2009, and Miller's parents testified that they heard Miller and his friends engaged in this activity that night; and Miller's mother testified she was using the red rental car until the time of the shooting.

The Court of Appeals of Virginia rejected Miller's insufficiency claim. The Court noted particular evidence lending credibility to Darryl's testimony: in describing an interview with Darryl on the night of the shooting, Detective Todd Rodes testified that Darryl had never sought any favorable treatment in exchange for his identification of Miller as the shooter; and the surveillance video and the bullet hole in the white rental car corroborated Darryl's description of the color and order of the cars and the placement of the shooter. The Court also noted that rental car records and witnesses placed a white car and a red car in the Millers' possession on March 22, 2009, and a witness stated she saw Miller driving the red car a few days earlier. Based on this record, the Court rejected Miller's contention that Darryl's identification testimony was

8

inherently incredible. Instead, the Court held that "[t]he Commonwealth's evidence that [Miller] was the shooter was competent, credible, and was sufficient, when considered with the Commonwealth's other evidence, to support [Miller]'s convictions." (M. Dism. Ex. 2, at 7.)

In his federal petition, Miller raises some additional facts in support of his assertion as to the inherent incredibility of Darryl's testimony: the lack of evidence placing the Millers' rental cars at the shooting or establishing the cause of the hole in the white car; testimony that the Millers' residence was usually unlocked and the rental car keys were easily accessible; police officers' testimony about using lights to collect evidence from the crime scene; the distance from the porch to the street; and the brief time span of the shooting. He contends that Darryl's testimony—that when the shots started, he dove to the ground, but yet managed to identify Miller in the front car and shoot the second car before it passed out of sight—should be rejected as contrary to human biology. He argues further that, without Darryl's testimony, the remaining evidence is insufficient to establish beyond a reasonable doubt that Miller participated in the shooting as the Commonwealth alleged.

After reviewing the state court records, including the trial transcript, and the parties' arguments, the court concludes that the Court of Appeals' adjudication of this insufficiency claim was not contrary to, or an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts. As indicated by the Court of Appeals' summary, the jury had ample corroborating evidence on which to find Darryl's contemporaneous identification of Miller to be credible. No evidence suggested that Darryl asked authorities for leniency as a condition for his testimony or suggested any motive for him to point the finger falsely at Miller, rather than at one of the other participants in the earlier verbal confrontation. Moreover, defense witnesses were impeached by prior statements and

9

inconsistencies, criminal records, or by their inherent tendency as Miller's family and friends to aid his purported alibi. The court will grant the motion to dismiss as to Claim A.

## D. Effective Assistance of Counsel

To state a constitutional claim for ineffective assistance, petitioner must satisfy a two-prong test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 686-87 (1984). Petitioner must overcome "a strong presumption" that counsel's performance was reasonably competent, and the court may adjudge counsel's performance deficient only when petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 689-90. Even if petitioner can establish deficient performance under this high standard, relief remains unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief if petitioner fails to establish either of the Strickland prongs. Id. at 697.

As stated, Miller presented Claims C and D in his state habeas petition. In rejecting his habeas appeal, the Supreme Court of Virginia issued a summary order finding no error. Thus, under § 2254(d), this court may grant relief on Claims C or D only upon determining that the Circuit Court's rulings are objectively unreasonable. See Brumfield,135 S. Ct. at 2276.

### 1. Claim C: Assault and Battery Instruction

The primary charges against Miller were the aggravated malicious wounding of Ronald Slaughter and the malicious wounding of Keionca Miles. A necessary element of both these charges was proof that Miller wounded Slaughter and Miles "with intent to maim, disfigure, disable, or kill." See Va. Code Ann. §§ 18.2-51.2; 18.2-51. "[A]n intent to maim, disfigure or

10

kill may be presumed" when an attack is "attended with . . . violence and brutality." Boone v. Com., 415 S.E.2d 250, 252 (Va. 1992) (citation omitted).

On the other hand, a wounding accompanied by malice, but unaccompanied by a specific intent to "maim, disfigure, disable, or kill," can be punishable as assault and battery, rather than as malicious or unlawful wounding, depending on the evidence. See Va. Code Ann. § 18.2-54.[3] One cannot be convicted of assault and battery without an intention to do bodily harm, however. Boone, 415 S.E.2d at 251 (internal quotation marks and citation omitted). A requested lesser included offense should be granted if "any credible evidence in the record supports" it. Id.

Miller's trial counsel argued in his closing that the Commonwealth had not proven the requisite specific intent with which Miller had fired at the Madison Street residences—whether with intent to maim or kill or merely with intent to intimidate and frighten those present. With no objection from the parties, the trial court instructed the jury that proof beyond a reasonable doubt of each of four elements was necessary to convict Miller on the charge of aggravated malicious wounding of Ronald Slaughter: (1) that defendant wounded Slaughter; (2) that such wounding was with intent to maim, disfigure, disable, or kill; (3) that the act was done with malice; and (4) that defendant's act caused the victim severe injury and permanent impairment. The Court also told jurors that if they made the requisite finding only as to elements (1), (2), and (3), they should find Miller guilty of malicious wounding, and if they made the requisite finding only as to elements (1) and (2), they should find Miller guilty of unlawful wounding. The instruction on the charge of malicious wounding of Ms. Miles was similar, absent the severe

---

[3] This section states, in pertinent part:
On any indictment for maliciously shooting, stabbing, cutting or wounding a person or by any means causing him bodily injury, with intent to maim, disfigure, disable or kill him, . . . the jury . . . may find the accused not guilty of the offense charged but guilty of unlawfully doing such act with the intent aforesaid, or of assault and battery if the evidence warrants.
Va. Code Ann. § 18.2-54.

11

injury element. The Court further instructed the jurors that they should find Miller not guilty of each of these charges if they failed to find elements (1) or (2) beyond a reasonable doubt.

Miller argued on state habeas that trial counsel was ineffective in failing to request an instruction that also allowed for jurors to find him guilty of assault and battery. The Circuit Court ruled that the jury's finding of evidence sufficient to prove aggravated malicious wounding, as well as malicious wounding, precluded a finding of any reasonable probability that the jury would have found assault and battery instead, if given the instruction Miller now offers. See, e.g., Turner v. Com., 476 S.E.2d 504 (Va. App. 1996) (holding that trial court's refusal of voluntary manslaughter instruction was harmless error when verdict convicting defendant of first-degree murder and rejecting second-degree jury instruction compels conclusion that jury never would have reached voluntary manslaughter verdict). The Circuit Court also noted defense counsel's affidavit, stating that he offered instructions covering any verdict that he believed the jury could reach from the evidence. The Court refused to second-guess counsel's stated strategic decision that offering an assault and battery instruction "would have been totally untenable," because the "evidence was absolutely overwhelming that the crime committed was not assault and battery . . . ." (M. Dism. Ex. 6, at 7, ECF No. 7-6.)

After review of the record, the court concludes that the state courts' adjudication of this claim was not contrary to, or an unreasonable application of, Strickland as clearly established federal law and was not based on an unreasonable determination of the facts. Counsel pursued a reasonable trial strategy of emphasizing weaknesses in the evidence that Miller participated in the shooting. Once the jury found from the evidence that Miller was the shooter in the red car, however, they were entitled to presume from the violent and brutal circumstances of his attack that he intended to "maim, disfigure or kill." See Boone, 415 S.E.2d at 252. Indeed, the jury had

no evidence to the contrary—a deciding factor in the cases on which Miller relies. See Boone, 415 S.E.2d at 252 (finding lesser included instruction for assault and battery warranted where evidence included defendant's testimony that he did not intend to harm victim); Maye v. Com., No. 2311-98-2, 2000 WL 1219423, at *1 (Va. Ct. App. Aug. 29, 2000) (unpublished) (finding that evidence warranted lesser included assault and battery instruction where defendant "testified that he did not stab Ingram and that while he started the fight, he "did not want Ingram to get hurt, not like that bad"). As the state courts found, counsel had no valid evidentiary basis for the instruction Miller proffers, and thus, counsel's failure to pursue such an instruction was a reasonable trial strategy, and Miller has not shown any resulting prejudice under Strickland. The court will grant the motion to dismiss as to Claim C.

### 2. Claim D: Investigation of Other Suspects

Miller argues that with more diligent investigation of alternative suspects, counsel could possibly have discovered other individuals with an equal or greater motive and opportunity to fire shots at the residents of Madison Street. The Circuit Court rejected this claim upon finding that it failed under both prongs of Strickland. The Court credited counsel's statement that he had made all reasonable efforts to investigate the information that Miller gave him on this issue and had found nothing relevant to Miller's defense. The Court also found this investigation claim "too conclusory to establish deficient performance or prejudice under Strickland," because Miller failed to "identify the suspects that counsel should have identified, the nature of their participation, or their probable impact upon the outcome of the trial." (M. Dism. Ex. 6, at 7-8.)

This court agrees. As the Circuit Court stated, "Ineffective assistance of counsel under Strickland cannot be established on a nonspecific, general claim that counsel should have discovered alternative suspects." (Id. at 8 (citing Bassette v. Thompson, 915 F.2d 932, 940-41

(1990)). Thus, the state courts' adjudication of this claim was not contrary to, or an unreasonable application of, Strickland and was not based on an unreasonable determination of the facts. Therefore, the court will grant the motion to dismiss as to Claim D.

### III.

For the reasons stated, the court will grant the motion to dismiss Miller's § 2254 petition. Claim B is dismissed as procedurally barred, and Claims A, C, and D are dismissed as without merit, under § 2254(d). An appropriate order will enter this day.

ENTER: This 16th day of February, 2016.

_____
Chief United States District Judge